UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Deborah Stewart,
    Plaintiff
vs

The Proctor & Gamble
Company, et. al.,
    Defendants

Case Nos. C-1-04-721 (Hogan, M.J.)
C-1-04-723 (Hogan, M.J.)
C-1-04-794 (Hogan, M.J.)
C-1-05-183 (Hogan, M.J.)
C-1-05-337 (Weber, J.; Hogan, M.J.)
C-1-05-390 (Weber, J.; Hogan, M.J.)
C-1-05-480 (Weber, J.; Hogan, M.J.)

**REPORT AND RECOMMENDATION**
**AND**
**ORDER**

    This matter is before the Court on Defendants The Procter & Gamble Company and the Iams Company's Joint Motion for Summary Judgment (Consol. Case No. C-1-04-721, Doc. 36; Case No. C-1-05-337, Doc. 16; Case No C-1-05-390, Doc. 17; Case No. C-1-05-480, Doc. 15), Plaintiff's Motion for Certification of Class, Continuance or Extension of Time to Secure Affidavits, and Memorandum in Opposition to Defendants the Proctor & Gamble Company's and the Iams Company's Joint Motion for Summary Judgment (Doc. 38)[1], and Defendants' Reply Memorandum in Support of their Joint Motion for Summary Judgment and Joint Memorandum in Opposition to Pro Se Plaintiff's Motions for Class Certification and a Rule 56(f) Extension of Time (Consol. Case No. C-1-04-721, Doc. 49; Case No. C-1-05-337, Doc. 18; Case No C-1-05-390, Doc. 19; Case No. C-1-05-480, Doc. 17).[2]

---

[1] Plaintiff's Response to Defendants' motion was filed in Case No. 04cv721 only, but all pending cases were referenced in the caption of the memorandum.

[2] Defendants' motion for summary judgment is supported by Plaintiff's deposition transcripts ("Stewart Dep.") and the affidavits of Dwain Carver ("Carver Aff."), Bob Miller ("Miller Aff."), Cleveland Bazemore ("Bazemore Aff."), Stephanie Shepherd ("Shepherd Aff."), Steve Lighthall ("Lighthall Aff."), Michael Glassman ("Glassman Aff."). Plaintiff submitted voluminous documents in support of her memorandum. However, these documents were not properly authenticated as provided by Fed. R. Civ. P. 56(e). See Fed. R. Civ. P. 56(e); see also Hal Roach Studios v. Feiner, 896 F.2d 1542, 1550 (9th Cir. 1989)(To be considered by the court documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e), and the affiant must be a

## BACKGROUND

Pro se Plaintiff filed seven cases against P&G and Iams. Six of these cases were filed against The Proctor & Gamble Company ("P&G") (04cv721, 04-723, 04-794, 05cv183, 05cv337, & 05cv480) and one case was filed against The Iams Company ("Iams")(05cv390). All cases concern Plaintiff's employment with P&G at its Ivorydale plant. In 2002, P&G sold parts of Ivorydale including the boilerhouse where Plaintiff worked to Cinergy. (Doc.36, Ex. G, Affidavit of Dwain Carver, at ¶ 3). The 2002 sale caused a decrease in the number of employees at Ivorydale from 500-600 to less than 100 employees. (Miller Aff. at ¶ 6). All the employees were offered the following alternatives: severance packages, opportunity to apply for other jobs at P&G, retirement package (if qualified), opportunity to apply for employment with one of the entities purchasing P&G's assets at the Ivorydale facility. (Carver Aff. at ¶5; Miller Aff. at ¶ 7).

As a result of negotiations between P&G and Plaintiff's union, the Employee's Representation Association ("ERA"), the Collective Bargaining Agreement ("CBA") was amended to provide that any employee subject to the reduction in force ("RIF"), who was not able to immediately find new work at P&G, could stay in their existing Ivorydale job until that position was eliminated, at which time the employee could elect to voluntarily terminate and take a severance package. (Carver Aff. at ¶6). Plaintiff applied for a job with Cinergy but was not hired. (Id. at ¶7). P&G Human Resources managers assisted Plaintiff in applying for other jobs within P&G and helped her to attempt a transfer to other P&G facilities besides Ivorydale. (Doc. 36, Ex. B, Affidavit of Bob Miller, at ¶ 10). However, Plaintiff was not hired or offered a transfer. (Carver Aff. at ¶8). One manager arranged an interview for Plaintiff for a position at a P&G manufacturing plant in Arkansas (a job Plaintiff claimed she wanted) but Plaintiff failed to appear for the interview. (Id.; Miller Aff. at ¶13). This manager also contacted P&G plants in Ohio, North Carolina, Connecticut and Iowa on Plaintiff's behalf. (Miller Aff. at ¶ 13).

Since as few as two or three technicians would be working together at the same time, and because the technician work involved hazardous materials, P&G determined that all manufacturing technicians would need to be able to rescue one another under emergency situations, including being able to conduct "hazmat confined space rescue." (Doc. 36, Ex. H, Affidavit of Stephanie Shepherd, at ¶ 4). Therefore, in January, 2003, P&G required all manufacturing technicians working at Ivorydale to undergo medical testing for the purpose of disclosing medical conditions that would impact emergency hazardous material rescues that each might have to perform. (Id. at ¶ 7). Plaintiff, who wears hearing aids in both ears, failed the medical test and was not hired for continued as a manufacturing technician at the Ivorydale facility. (Id. at ¶ 7; Carver Aff. at ¶ 10). Plaintiff requested no accommodation regarding the need to perform hazmat rescues. (Shepherd Aff. at ¶ 11; Carver Aff. at ¶ 11). Plaintiff only asked that she be kept on the payroll while she applied for other jobs at P&G and until the transfer of the Utilities Department to Cinergy was completed. (Carver Aff. at 11-12). P&G granted Plaintiff's request. (Id.). On February 28, 2003, Cinergy took over the Utilities Dept.

---

person through whom the exhibits could be admitted into evidence.")

2

and consequently, such was Plaintiff's last day of employment with P&G. (Carver Aff. at ¶12). Plaintiff was offered, but declined to accept P&G's severance package. (Miller Aff. at ¶11; Carver Aff. at ¶13). Moreover, Plaintiff elected not to voluntarily resign from P&G and was terminated on February 28, 2003 as her job with P&G was eliminated. (Carver Aff. at ¶ 12-13).

In the fall of 2003, Plaintiff applied for a manufacturing technician job at Iams' pet food manufacturing plant in Liepsic, Ohio. (Doc. 36, Ex. F, Affidavit of Cleveland Bazemore, at ¶5). More than 300 people completed a pre-screening application on-line with Iams for the position Plaintiff was seeking. (Id.). Plaintiff was selected for an interview, and was interviewed twice, but ultimately scored too low on two subjects to be considered further. She was not offered the position. (Id. at ¶8).

Plaintiff was the only employee out of more than 500 who declined to accept a severance package or retire, and who was unable to find employment with P&G or another entity. (Carver Aff. at ¶13; Miller Aff. at ¶11). Both Plaintiff and Defendant agree that, because Plaintiff refused to voluntarily resign from P&G, she was terminated from her employment at Proctor & Gamble's (P&G) Ivorydale branch on February 28, 2003.

Plaintiff, by means of her seven separate causes of action: 1) seeks class certification of certain claims; 2) alleges violation of the WARN Act; 3) alleges sex discrimination and retaliation in violation of Title VII and/or O.R.C. § 4112.02, et seq.; 4) alleges age discrimination in violation of the ADEA and/or O.R.C. § 4112.02; 5) alleges disability discrimination in violation of the ADA; 6) asserts a hybrid §301 violation; 7) alleges unfair labor practices (P&G improperly bargained with the ERA regarding the RIF; and 8) asserts miscellaneous claims such as violation of the Statute of Frauds, § 1983 and Rehabilitation Act. However, Plaintiff does not discuss these in her complaints.

## OPINION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989).

3

Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### Rule 56(f) Extension of Time

Plaintiff requests an extension of time to obtain affidavits pursuant to Fed. R. Civ. P. 56(f). Apart from stating that she "underestimated" the value of affidavits, Plaintiff offers no justification for such extension. Rule 56(f) requires that: (1) the party requesting the extension file an affidavit testifying as to why she cannot present essential facts in opposition to the pending summary judgment motion; and (2) the party "indicate to the district court what material facts it hopes to uncover" if an extension of time is granted. *United States v. Dairy Farmers of America, Inc.*, 426 F.3d 850, 863 (6th Cir. 2005). Plaintiff has failed to satisfy either requirement of Rule 56(f). Therefore, Plaintiff's request for an extension of time to secure affidavits (Doc. 38) is denied.

### Class Certification

Plaintiff, in her Response to Defendants' Motion for Summary Judgment, also makes a request for class certification pursuant to Fed. R. Civ. P. 23. However, pursuant to S.D. Ohio Civ. Rule 23.3, "the party asserting a class action shall, within 120 days after the filing of a pleading asserting the existence of a class, move for a determination under Rule 23(c)(1), Fed. R.

4

Civ. P., as to whether the action is maintainable as a class action . . ."[3] On October 18, 2004, Plaintiff filed a Complaint against P&G asserting the existence of a class action. On May 19, 2006, Plaintiff filed a Motion for Class Certification together with her Memorandum in Opposition to Defendants' Motion for Summary Judgment. (Doc. 38). Plaintiff's motion, therefore, is time-barred. Moreover, Plaintiff has not established how the requirements of Rule 23 are satisfied in any of her cases. Other than stating that the class consists of "all bargaining unit employees of P&G Ivorydale Manufacturing Plant," she has not explained who constitutes the proposed class and how her claims are "typical" of the claims of the proposed class. Indeed, in her deposition testimony, Plaintiff claims she was "uniquely disaffected" by P&G's conduct and admits that a class action is not maintainable. (Doc. 36, Ex. A, Deposition of Deborah Stewart, at 58-59). For these reasons, we find that Plaintiff's Motion for Class Certification is not well taken and should be denied.

## WARN Act

Plaintiff also asserts a claim under the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §2101, et seq. For the WARN Act to be applicable to a RIF, there must be a "mass layoff" as defined by the statute. Under the statute, a "mass layoff" is one in which, within a 30-day period, 33% of the employees at a facility experience an "employment loss" as defined by the statute, and the total number of employees who experience an "employment loss" also exceeds fifty. 29 U.S.C. § 2101(a)(3). An employee's termination constitutes an "employment loss" under the WARN Act only if the termination is involuntary and for a reason other than discharge for cause or retirement. 29 U.S.C. § 2101(a)(6). If an employee voluntarily terminates her employment with the employer, that termination is not an employment loss for purposes of the WARN Act. Plaintiff was the only P&G employee at Ivorydale to experience an "employment loss." All other employees at Ivorydale either 1) voluntarily retired; or 2) voluntarily terminated their P&G employment in order to take a severance package or begin work with Cinergy or another entity who purchased parts of Ivorydale; or 3) stayed employed with P&G. (Carver Aff. at ¶ 13; Miller Aff. at ¶ 11). For this reason, we find that there was no "mass layoff" at Ivorydale and the WARN Act does not apply to the facts of the case.

## Sex Discrimination & Retaliation

Plaintiff asserts claims for sex discrimination and retaliation under Title VII and O.R.C. § 4112. Prior to bringing a Title VII suit, Plaintiff must file timely charges of discrimination with the EEOC and must receive and act upon the EEOC's right-to-sue letter. 42 U.S.C. §§ 2000e-5(e), -5(f)(1); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). In order to be considered timely, Plaintiff must file charges with the EEOC within 300 days of the alleged unlawful employment practice. *Doan v. NSK Corp.*, Nos. 03-1900/03-1396, 2004 WL 957913 at *2 (6th Cir. Apr. 30. 2004). The requirement that charges be filed with the EEOC within the

---

[3] At the time Plaintiff filed her Complaint in October of 2004, Rule 23.3 required that motions to certify the class be filed within 120 days of the pleading asserting the class action.

5

statutory time limit is not a jurisdictional prerequisite; rather it is a condition precedent (much like a statute of limitations) and is subject to equitable tolling, waiver, and estoppel. *Zipes v. Trans World Airlines*, 455 U.S. 385 (1982); *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481 (6th Cir. 1989). However, "[a]bsent compelling circumstances, the limitations period should not be tolled and the courts typically apply equitable tolling 'only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Doan*, 2004 WL 957913 at *2 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir.2000)). We find that no such compelling circumstances exist in this case.

Plaintiff filed two EEOC charges against P&G. She filed the first charge on November 24, 2003 regarding discriminatory acts occurring on or before January 15, 2003. This charge was filed three hundred and thirteen days following the alleged discriminatory acts. The second EEOC charge was filed on December 19, 2003 regarding alleged discriminatory acts occurring on or before February 18, 2003. This charge was filed three hundred and five days following the alleged discriminatory acts. In both charges, Plaintiff categorized the discrimination as sex discrimination, disability discrimination and retaliation. (Doc. 36, Exs. C, D). No EEOC charge complaining of age discrimination was filed by Plaintiff against P&G.[4] Plaintiff filed an EEOC charge against Iams on October 1, 2004, regarding alleged discriminatory acts occurring on November 11, 2003, the date Plaintiff received notification that her claim for employment was rejected. She listed claims of age, sex and disability discrimination and retaliation. (Id. at Ex. E). Three hundred and twenty five days elapsed between the filing of Plaintiff's EEOC complaint and the date of the alleged discriminatory act. Since the time limit is 300 days, Plaintiff's EEOC complaints are untimely and her claims are, therefore, time-barred. *Doan*, Nos. 03-1900/03-1936, 2004 WL 957913 (6th Cir. Apr. 30. 2004).

Despite our finding that Plaintiff's claims are time-barred, and in an abundance of caution, we will address the merits of Plaintiff's claims. In passing Title VII, Congress determined that sex, race, religion, and national origin are not relevant to the selection, evaluation, or compensation of employees. *Price Waterhouse v. Hopkins*, 57 U.S.L.W. 4469, 4472 (1989).[5] "The principal focus of [Title VII] is the protection of the individual employee, rather than the protection of the minority group as a whole." *Connecticut v. Teal*, 457 U.S. 440, 453-54 (1982).

---

[4] Plaintiff has, therefore, failed to exhaust her administrative remedies with respect to this claim as against P&G. *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987)("an administrative charge must be filed with the EEOC before a discrimination plaintiff can bring a Title VII action in federal district court."), *see also Knafel v. Pepsi-Cola Bottlers*, 899 F.2d 1473, 1480-81 (6th Cir. 1990).

[5] Federal case law interpreting Title VII is applicable to claims asserted under Ohio Rev. Code § 4112.02. *See Ohio Civil Rights Comm'n v. Ingram*, 630 N.E.2d 669 (Ohio 1994); *Little Forest Med. Center of Akron v. Ohio Civil Rights Comm.*, 575 N.E.2d 1164 (Ohio 1991); *Osman v. Isotec, Inc.*, 960 F. Supp. 118, 120-21 (S. D. Ohio 1997)(Dlott, J.). Accordingly, this Court's opinion with respect to Plaintiff's Title VII claims applies with equal force and effect to Plaintiff's discrimination claims asserted under the Ohio civil rights statute.

Plaintiff's sex discrimination claim is that of disparate treatment. In such a case, Plaintiff has the burden of proving unlawful discrimination because of gender. Proof of discriminatory intent is crucial. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 92 (6th Cir. 1982); *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1257 (6th Cir. 1981). Because of the difficulty of proving discriminatory motive, the Supreme Court has made available a special order of proof in employment discrimination cases, the initial stage of which is described as plaintiff's prima facie case. *Texas Depart. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Askin v. Firestone Tire & Rubber Co.*, 600 F. Supp. 751, 753-54 (E.D. Ky. 1985), *aff'd without opinion*, 785 F.2d 307 (6th Cir. 1986).

Plaintiff may establish a prima facie case by showing that: (1) she belongs to a protected class; (2) she was qualified for the job; (3) she was subjected to an adverse employment action; and (4) a similarly situated worker not in a protected class was treated more favorably. *Talley v. Bravo Pitino Rest, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).* See also *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335-36 n.15 (1977): *Shah v. General Electric*, 816 F.2d 264, 267 (6th Cir. 1987); *Beaven v. Commonwealth of Kentucky*, 783 F.2d 672, 675-76 (6th Cir. 1986). With respect to Plaintiff's failure to hire claim, she must show that: (1) she belongs to a protected class; (2) she applied, and was qualified for, a position for which the employer was seeking applicants; (3) she was rejected for the position; (4) the position was ultimately filled by someone outside the protected class. *Lomax v. Sears, Robuck & Co.*, No. 99-6589, 2000 WL 1888715, at *10-11 (6th Cir. Dec. 19, 2000)(citing *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 410 (6th Cir. 1999)). See also, *McDonnell Douglas*, 411 U.S. at 802 n.13.

The establishment of a prima facie case permits the "'inference of discrimination . . . because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Shah*, 816 F.2d at 268 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Thus, by establishing a prima facie case, plaintiff creates a rebuttable presumption that defendant unlawfully discriminated against her. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). This presumption is a procedural device that temporarily ceases plaintiff's burden of producing evidence.

With respect to Plaintiff's claim that she was terminated from P&G on the basis of her gender, Plaintiff fails to establish a prima facie case. Plaintiff has failed to show that she was replaced by someone outside of her protected class, or that she was treated less favorably than one or more similarly situated male employees at P&G. The evidence presented by Defendant, which is not rebutted by Plaintiff, is that Plaintiff's job at the Ivorydale plant was eliminated as a result of the sale of the Ivorydale Utilities Department to Cinergy. (Miller Aff. at ¶15). Thus, Plaintiff was not replaced by anyone, be it outside the protected class or within. Moreover, the evidence submitted shows that Plaintiff, rather than being treated less favorably than similarly situated male employees, was greatly assisted by Bob Miller in her attempts to find other P&G employment. (Miller Aff. at ¶¶ 8, 10, 12, 13, 14).

With respect to Plaintiff's sex discrimination claim against Iams, she cannot show that

7

she was qualified for the position for which she applied. (Miller Affidavit at ¶ 16). Cleveland Bazemore, the Human Resources Site Manager at the Iams plant in Leipsic, Ohio, stated that Plaintiff applied for the job of Manufacturing Technician in the fall of 2003. The first step after competing an on-line application is to complete an on-line request for more information, referred to by Iams as the "RMI" if the applicants answers meet or exceed Iams' needs. An "RMI" was sent to Plaintiff and based on her responses, a first interview was scheduled and conducted. Six out of twenty candidates were eliminated after the first interview, which Plaintiff survived. At the second interview, nine candidates survived on the basis of test scores and Plaintiff, who received a score of less than twenty-one, was eliminated. One of the nine failed a background check and the other eight were hired by Iams. Two of the eight hired were female. As such, Plaintiff has failed to establish a prima facie case of sex discrimination against P&G.

Plaintiff further claims that her termination by P&G, and Iams' failure to hire her were in retaliation for engaging in protected activity. In such a case, Plaintiff has the burden of proving retaliation by a preponderance of the evidence. Proof of retaliatory motive is crucial. *See Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 92 (6th Cir. 1982); *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1257 (6th Cir. 1981).

In order to establish a prima facie case of retaliation under Title VII, Plaintiff must produce evidence that: 1) she engaged in activity protected by Title VII; 2) Defendants knew that Plaintiff had engaged in such activity; 3) subsequently, Defendants made an employment decision adversely affecting Plaintiff; and 4) there is a causal link between Plaintiff's protected activity and Defendant's adverse employment action. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 (6th Cir. 2001); *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987); *Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.*, 783 F.2d 50, 54 (6th Cir. 1986), *cert. denied*, 478 U.S. 1006 (1986). Protected activity consists of opposing any practice made unlawful by Title VII, making a charge, testifying, assisting, or participating in any manner in a Title VII investigation, proceeding or hearing. 42 U.S.C. § 2000e-3 (a).

Plaintiff may demonstrate the requisite causal connection by demonstrating disparate treatment or disparate punishment; i.e., that similarly situated employees were not punished for rule violations similar to those committed by plaintiff. *See Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984), *appeal after remand, Jackson v. Pepsi-Cola*, 783 F.2d 50 (6th Cir. 1986), *cert. denied*, 478 U.S. 1006 (1986). An inference of causal connection may also be drawn where defendant's adverse employment action closely followed plaintiff's protected activity. *Wrenn*, 808 F.2d at 501; *Womack v. Munson*, 619 F.2d 1292, 1296 & n.6 (8th Cir. 1980), *cert. denied*, 450 U.S. 979 (1981).

In Plaintiff's case, she engaged in protected activity on four separate occasions: (1) she filed a grievance with the ERA in 1992; (2) she filed a second grievance on February 20, 2003, in which she sought to challenge the Ivorydale sale; (3) she filed two EEOC charges following her termination from P&G on November 24, 2003 and December 19, 2003. (Doc. 36, Exs. C, D, J). However, there is no evidence that a causal connection exists between the protected activity and

Plaintiff's termination from P&G. The protected activity in 1992 is, without more, simply too remote in time to provide a causal connection. Moreover, the protected activity in November and December of 2003 occurred after her termination. Thus, the only protected activity which can be considered when determining whether a causal connection exists is Plaintiff's grievance in February, 2003, challenging the sale of Ivorydale. Plaintiff, however, has provided no evidence that such protected activity was causally related to her termination. In contrast, the unrebutted evidence indicates that Plaintiff was terminated from P&G due to its sale of the Ivorydale plant and the subsequent elimination of her job. (Miller Aff. at ¶ 17; Carver Aff. at ¶¶ 14-16). Moreover, in his sworn affidavit, Cleveland Bazemore stated that Plaintiff's gender played no role in the process. Mr. Bazemore stated that hiring decisions at Iams are made independently from P&G and that no Iams decision-maker had any knowledge that Plaintiff had contacted EEOC or had filed union grievances in relation to her previous employment at P&G. (Doc. 36, Exhibit F, Affidavit of Cleveland Bazemore at ¶ 10).

Plaintiff argues in her Memorandum in Opposition that she understood, or was led to understand, that she had passed both the tests and interviews and that her employment was conditioned on the passage of a drug test. (Doc. 38, at p. 6). Plaintiff then says that she was taking prescription drugs and infers that she must have failed the drug test and was not given an opportunity to produce prescriptions. Later at in her Memorandum in Opposition, Plaintiff asserts that she was given a "second solo interview by management" and then given an offer of employment contingent upon the passage of a drug test. (Id. at p. 31). She also stated that her past employment at P&G was discussed at her initial interview. However, Plaintiff has submitted no evidence in support of her arguments. As such, Plaintiff has failed to show a causal connection between her protected activity and her termination from P&G or Iams' failure to hire her.

### Age Discrimination

Because Plaintiff's age discrimination claim is not properly before the Court, *see supra* at p. 6 n.3, we will discuss such claim as it relates to Defendant Iams only.

The ADEA was intended to protect the older worker from arbitrary classifications on the basis of age but not to restrict the employer's right to make bona fide business decisions. *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1179 (6th Cir. 1983). Nor was it intended "as a vehicle for judicial review of [those] business decisions." *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982). In an action under the ADEA the ultimate issue is whether age was a determining factor in the employment decision made with respect to the complaining employee. *Merkill v. Scovill*, 787 F.2d 174, 177 (6th Cir. 1986).

Plaintiff's burden and procedural order of proof for her age discrimination claim is generally that described above for Title VII actions. *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 (6th Cir. 1975). She bears the burden of proving a prima facie case of age discrimination.

9

A plaintiff may establish a *prima facie* case of disparate treatment by showing either direct or indirect evidence of discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir. 1982). A plaintiff alleging disparate treatment age discrimination may establish a prima facie case through the following circumstantial evidence: (1) she is a member of the protected class; (2) she suffered an adverse employment action; (3) she was otherwise qualified for the position; and (4) after she was rejected, a substantially younger applicant was selected, or similarly situated non-protected employees were treated more favorably. *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 510-11 (6th Cir. 2004). In other words, the plaintiff must show that age was a determining factor in the adverse action the employer took against her. *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 514 (6th Cir. 1991). The employer is entitled to summary judgment if the plaintiff does not establish a *prima facie* case. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-84 (6th Cir. 1992).

In the present case, the unrefuted evidence shows that Plaintiff was not qualified for the manufacturing technician position for which she was considered at Iams. (Miller Aff. at ¶ 16). As discussed previously, more than 300 individuals applied for the position at issue. Thus, these positions were highly competitive. Following the first interview, six out of twenty candidates were eliminated. Plaintiff, however, was not eliminated at this point. During her in-person interviews, Plaintiff scored low in the areas of "collaboration and communication" and "solutions," thereby disqualifying herself from further consideration and hiring at Iams. (Bazemore Aff. at ¶ ¶ 5-8; *see also* Miller Aff. at ¶16). Nine candidates survived on the basis of test scores and Plaintiff, who received a score of less than twenty-one, was eliminated. One of the nine failed a background check and the other eight were hired by Iams. The evidence shows that four of the eight were over the age of forty. (Bazemore Aff. at ¶ 11). Thus, there is simply no evidence that Plaintiff was not hired by Iams based on her age. For this reason, Plaintiff has failed to establish a *prima facie* case of age discrimination.

### Disability Discrimination

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 202, 42 U.S.C. § 12132. To make out a prima facie case under Title II of the ADA, a plaintiff must establish that (1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability. *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003); *see also Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir.1998); *Burns v. City of Columbus*, 91 F.3d 836, 841 (6th Cir.1996) (setting forth the prima facie case under the Rehabilitation Act); *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir.1995) (finding that in order to establish disability discrimination under Title II of the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the

10

benefit due to discrimination solely on the basis of the disability).

The Ohio Revised Code defines "disability" as:

> a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working: a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

O.R.C.§ 4112.01(A)(13). Federal regulations interpreting the Americans With Disabilities Act ("ADA") define the term "substantially limits" as meaning:

> ... significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and activities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3).[6]

In the present case, Plaintiff has failed to establish that she is disabled, or was regarded by P&G or Iams as having a disability. The evidence submitted indicates that Plaintiff's hearing impairment, when corrected by the use of her hearing aids, does not substantially limit a major life activity. Indeed, Plaintiff asserted that despite her hearing impairment, she has been "able to fulfill at a high level all of her essential job duties at P&G and was and remains fully capable of continuing to perform such duties . . . at a comparable level of achievement." (Doc. 36, Ex. E, Plaintiff's Complaint in Case No. C-1-04-338, at ¶ 13). Likewise, Plaintiff's deposition testimony reflects that none of Plaintiff's major life activities are limited when she wears her hearing aids. (Id. at Ex. A, Stewart Dep. at 215). Moreover, the unrebutted evidence submitted by Defendants indicates that no one within P&G or Iams management ever regarded Plaintiff as being disabled, nor was she treated differently based on her hearing impairment. (Carver Aff. at ¶ 15; Bazemore Aff. at ¶ 9). Bazemore stated that no one at Iams was aware that Plaintiff had a hearing impairment. (Bazemore Aff. at ¶ 9).

Plaintiff also cannot show that she was "otherwise qualified" for work at either P&G or Iams. As discussed above, based on Plaintiff's test scores, she was disqualified for consideration for employment with Iams. (*See supra* at pp. 8, 9-10). With respect to her continued employment at P&G, the undisputed evidence shows that Plaintiff was not able to perform confined space emergency rescues while wearing a Level A hazmat suit and was thus, not

---

[6] The Ohio Supreme Court has held that courts may look to regulations and cases interpreting the federal ADA for guidance in interpreting Ohio law. *Columbus Civil Service Comm. v. McGlone*, 697 N.E.2d 204, 206-207 (Ohio 1998).

11

qualified for continued employment as a manufacturing technician with P&G. (Shepherd Aff. at ¶ 10). As a result of the sale of Ivorydale, P&G retained less than 100 employees at Ivorydale including manufacturing technicians and managers. (Carver Aff. at ¶ 9). Due to the shifts worked by manufacturing technicians, there would often be two or three technicians working together. They occasionally worked near hazardous materials and thus, needed to be able to wear a Level A hazmat suit. (Id.). Because of this, P&G determined that all technicians needed to be able to enter a small confined space, while wearing a Level A hazmat suit, and rescue a co-worker. (Id.). The Level A hazmat suit used for such rescues is airtight and is frequently 20 to 30 degrees hotter inside the suit than the outside air temperature. (Shepherd Aff. at ¶ 4). The rescues occur in a tank and instructions are given to the rescuer from outside the tank. (Id. at ¶ 6). Therefore, the rescuer must be able to receive instructions, once in the tank, from fellow rescuers outside the tank; to see and hear clearly; to perform a rescue quickly (in three minutes or less); and be able to perform a rescue during the day and the night. (Id.). According to the National Fire Protection Association standards, hearing aids cannot be worn while performing a rescue because: (1) hearing aids are not designed to allow the wearer to "hear or discriminate acoustic cues" (such as collapsing wall/timber, gas leaks, traffic sounds), or radio broadcasts that are essential safety requirements at a fire or rescue scene," (2) hearing aids "seriously compromise the ability to localize acoustic cues so that the source of impending danger is confused and safety is imperiled," (3) "hearing aids are not calibrated to function in areas of high background noise (fire scene, rescue scene, traffic), during radio transmissions." (Carver Aff. at Ex. B, Memorandum of Jim Woodrum). Plaintiff underwent an extensive hearing test and it was determined that she did not to possess the requisite qualifications needed to perform the essential functions of the manufacturing technician job and was unable to perform confined space rescues because she presented a danger to both herself and others. (Shepherd Aff. at ¶ 7). Wearing the hazmat suit and performing rescues while not wearing hearing aids was determined not to be a viable option due to Plaintiff's pronounced hearing loss in both ears and inability to hear low frequency sounds. (Id. at ¶¶ 7-9, 10). Likewise, for the reasons outlined above, it was determined that Plaintiff could not safely perform rescues while wearing her hearing aids. For these reasons, P&G determined that Plaintiff was not "otherwise qualified" to perform the confined space rescue work with or without an accommodation. Plaintiff has offered nothing to rebut this conclusion and therefore, has failed to carry her burden that she can perform all the essential functions of the manufacturing technician job. *See Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 456-57 (6th Cir. 2004).

Finally, Plaintiff has not shown that Defendants failed to make a reasonable accommodation. Regardless of whether a reasonable accommodation existed, the undisputed evidence indicates that Plaintiff never requested an accommodation related to any disability she thought she had. (Carver Aff. at ¶ 15; Bazemore Aff. at ¶ 9). A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633-34 (6th Cir. 1998). Plaintiff has not satisfied this burden.

In defense of Defendants' Motion for Summary Judgment, properly supported by

multiple affidavits and Plaintiff's deposition testimony, Plaintiff presents mere allegations and non-sworn statements. Plaintiff has failed to demonstrate a prima facie case of discrimination relative to sex, age or disability because she has failed to show that she was qualified for the job, that Iams knew of her engagement in protected activity, and that Plaintiff's rejection was related or caused by her EEOC complaints or grievance activity even if we consider Plaintiff's unsworn statements as lawfully supporting her claims. Accordingly, summary judgment is appropriate with respect to Plaintiff's discrimination and retaliation claims.

### Plaintiff's Hybrid § 301 Claim

The Complaints filed in Case Nos. C-1-05-183 and C-1-05-480, assert hybrid §301claims against P&G and the ERA. On April 11, 2007, the Court recommended that the ERA's Motion for Summary Judgment in Case No. C-1-05cv480, dismissing Plaintiff's claims against the ERA. (*See* Case No. 05cv480, Doc. 25)[7] Thus we need not reach Defendants' argument that Plaintiff's hybrid §301claim is time-barred.[8]

A plaintiff employee in a hybrid § 301 suit must prove both that the employer's action violated the terms of the collective bargaining agreement and that the union breached its duty of fair representation with regard to the matter. *Vaca v. Sipes*, 386 U.S. 171, 186 (1967); *see also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976); *Bagsby v. Lewis Bros. Inc. of Tennessee*, 820 F.2d 799, 801 (6th Cir. 1987). Because the Court has previously determined that Plaintiff failed to establish that the union breached its duty of fair representation, Plaintiff, cannot, as a matter of law, maintain a hybrid § 301 claim against P&G. As such, summary judgment is appropriate with respect to Plaintiff's hybrid § 301 claim against P&G.

### Unfair Labor Practices' Claim

The National Labor Relations Board ("NLRB") has exclusive jurisdiction over claims in which a plaintiff complains of conduct which allegedly constitutes an unfair labor practice. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982). Plaintiff alleges that P&G refused to bargain in good faith with the ERA. (Case No. C-1-05-337, Complaint at p.2). Such a claim is within the exclusive jurisdiction of the NLRB. 29 U.S.C. § 158(a)(5). Accordingly, summary judgment, in P&G's favor, is appropriate with respect to this claim.

---

[7] Plaintiff's hybrid 301 claim in Case No. C-1-05-183 was consolidated with her claims in C-1-04-721, in which the Court granted the ERA's Motion for Summary Judgment dismissing Plaintiff's Complaint as against the ERA. (Case No. 04cv721, Doc. 75).

[8] The limitations period is six months. *Del Costello v. Int'l Brotherhood of Teamsters, 462 U.S. 151 (1983)*. Plaintiff's two Complaints, one filed on February 18, 2005 and the other on June 16, 2005 both reference the date of February 28, 2003 or events that occurred prior to that date. In either case, more than six months elapsed between the date the cause of action accrued and the date Plaintiff's Complaints were filed. This fact alone justifies the granting of Defendant's Motion for Summary Judgment.

13

Miscellaneous Claims

To the extent Plaintiff is attempting to plead additional claims citing various presidential Executive Orders and federal statutes, Plaintiff has failed to plead such with any amount of specificity. Accordingly, these allegations are insufficiently pled and summary judgment is appropriate. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)(citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed,* *437 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985)("In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'")).

### IT IS THEREFORE ORDERED THAT

1) Plaintiff's Motion for Continuance or Extension of Time to Solicit and Secure Affidavits (Doc. 38) be DENIED.

2) Defendants' Motion for Summary Judgment (Doc. 36) be GRANTED.

3) Plaintiff's Complaint be DISMISSED.

4) This Case be TERMINATED upon the Court's docket.

### IT IS THEREFORE RECOMMENDED THAT

1) Defendants' Motions for Summary Judgment (Docs. 16, 17, 15) be GRANTED.

2) Plaintiff's Complaints be DISMISSED against Defendants P&G and Iams.

3) This case be TERMINATED upon the Court's docket.

Date: 3/31/08

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING
## OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\SMITHLE\SUMJUDG\Stewart.msj.wpd

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☐ Agent<br>☐ Addressee |
| | B. Received by ( Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Deborah Stewart<br>1438 Windsong<br>Mason, OH 45040 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7007 1490 0001 0562 6714 | |

PS Form 3811, August 2001    Domestic Return Receipt    102595-01-M-2509